## A05A0428. COLONIAL LIFE & ACCIDENT INSURANCE COMPANY v. HEVEDER.
### (618 SE2d 39)

SMITH, Presiding Judge.

We granted the application for interlocutory appeal of defendant Colonial Life & Accident Insurance Company to review the trial court's denial of its motion for summary judgment. Because the relevant provision of the Georgia insurance code discharges Colonial from liability, we reverse.

This action was brought by William Robert Heveder against numerous defendants for various claims arising out of the death of his father William Robert Heveder, Sr. Heveder brought a wrongful death claim against his father's widow, Debra Ann Heveder, and Lance McKinnen, her son from another relationship, alleging that they conspired to murder his father to prevent him from divorcing Mrs. Heveder because of her meretricious relationship with another man. Heveder also sued four life insurance companies, including Colonial, seeking a declaration that he and the minor child of the marriage owned all right, title and interest in the proceeds of the insurance on his father's life.

Colonial answered, denying that it was obligated to Heveder. It asserted that it had made payment in accordance with the terms of the policy before receiving written notice of a claim by or on behalf of Heveder or anyone other than the named beneficiary and that, pursuant to OCGA § 33-24-41, it therefore was discharged from all claims. After discovery, Colonial filed a motion for summary judgment on this basis. After Heveder withdrew his request for oral argument, the trial court denied the motion in a brief order and granted a certificate of immediate review. Colonial's unopposed application for interlocutory appeal was granted, and this appeal followed.

The significant facts are not in dispute. Colonial issued to Heveder's father an "on and off-job accident only" insurance policy which included an accidental death benefit. Mrs. Heveder was the named beneficiary. After the death of Heveder's father on January 10, 2000, the Coffee County Sheriff's Department opened a murder investigation. On January 24, 2000, Mrs. Heveder filed a claim with Colonial, and Colonial hired an investigator to look into the circumstances of the death and the sheriff's investigation. The insurance investigator's report, dated April 28, 2000, reported that there were four potential suspects in the murder, including Mrs. Heveder, and

that Mrs. Heveder had not cooperated with sheriff's investigators. The insurance investigator's source, a detective with the sheriff's office, believed the murder to be "a planned conspiracy."

On September 26, 2000, Mrs. Heveder sent a letter to Colonial enclosing a copy of a June 15, 2000 letter signed by the sheriff of Coffee County on department letterhead, stating that "Mrs. Heveder was not at the marital home when the homicide was committed and is not a suspect or suspected as being the person who committed the murder." On October 10, 2000, Colonial paid the policy proceeds to Mrs. Heveder. As far as indicated by the record or the parties' briefs, the official investigation remains open, and no one has been charged with the murder of Heveder's father.

In his responses to Colonial's first request for admissions, Heveder admitted that as of October 10, 2000, neither he nor anyone acting on his behalf had sent to Colonial's home office or any other Colonial office any written notice of any kind, including notice that he or anyone other than Mrs. Heveder claimed to be entitled to payment of or an interest in the policy proceeds.

OCGA § 33-24-41 provides:

> Whenever the proceeds of or payments under a life or accident and sickness insurance policy or annuity contract become payable in accordance with the terms of the policy or contract or the exercise of any right or privilege under the policy or contract and the insurer makes payment of the proceeds or payments in accordance with the terms of the policy or contract or in accordance with any written assignment of the policy or contract, the person then designated in the policy or contract or by the assignment as being entitled to the proceeds or payments, if legally competent, shall be entitled to receive the proceeds or payments and to give full acquittance for the proceeds or payments and *the payments shall fully discharge the insurer from all claims under the policy or contract unless, before payment is made, the insurer has received at its home office written notice by or on behalf of some other person that the other person claims to be entitled to the payment or some interest in the policy or contract.*

(Emphasis supplied.) This statute was enacted as part of the 1960 Georgia insurance code, Ga. L. 1960, pp. 289, 669, Code Ann. § 56-2424, but the meaning of the phrase at issue here has never been construed by this court or the Georgia Supreme Court.[1]

---

[1] We have found only two decisions that have construed this statute: *JCS Enterprises v.*

Well-established principles of statutory construction require that "[t]he literal meaning of the words of a statute must be followed unless the result is an absurdity, contradiction, or such an inconvenience that it is clear that the legislature must have intended something else." (Citation omitted.) *Mansfield v. Pannell*, 261 Ga. 243, 244 (404 SE2d 104) (1991).

> We must seek to effectuate the intent of the legislature, OCGA § 1-3-1 (a), and to give each part of the statute meaning and avoid constructions that make some language mere surplusage. All parts of a statute should be harmonized and given sensible and intelligent effect, because it is not presumed that the legislature intended to enact meaningless language.

(Citations omitted.) *J. Kinson Cook, Inc. v. Weaver*, 252 Ga. App. 868, 870 (556 SE2d 831) (2001).

Here, the plain meaning of the statute is clear. It discharges the insurer from liability unless, before payment is made, the insurer receives written notice by or on behalf of another claimant to the policy proceeds. Heveder has admitted that neither he nor anyone acting on his behalf sent Colonial a claim notice "of any kind" asserting that he or any person other than the named beneficiary claimed the proceeds of the policy. This admission is dispositive. Heveder did not comply with the provisions of OCGA § 33-24-41, and Colonial's payment to the named beneficiary discharges it from further obligation as a matter of law. The Alabama Supreme Court reached a similar result in *Alfa Life Ins. Corp. &c. v. Culverhouse*, 729 S2d 325 (Ala. 1999), construing the virtually identical provision of § 27-14-24, Ala. Code 1975. While a decision by a court of another state is in no way binding on the courts of Georgia, we may adopt its reasoning if we find it sound and persuasive. *Bd. of Trustees &c. v. Christy*, 246 Ga. 553, 554 (1) (272 SE2d 288) (1980), overruled in part on other grounds, *Mayor &c. of Savannah v. Stevens*, 278 Ga. 166, 167 (598 SE2d 456) (2004). In this case, we find the reasoning of the Alabama Supreme Court sound and in accord with our interpretation of the similar Georgia statute.

The cases cited by Heveder deal, not with the application of OCGA § 33-24-41, but with bad faith refusal to pay a claim under OCGA § 33-4-6. Because Heveder admits he did not file a claim,

---

*Vanliner Ins.*, 227 Ga. App. 371, 375 (4) (489 SE2d 95) (1997), and *Life & Cas. Ins. Co. v. Webb*, 112 Ga. App. 344-345 (2) (145 SE2d 63) (1965). Neither is applicable here.

demand, or notice of any kind with Colonial before payment of the policy proceeds, and Colonial paid the only claim before it, those cases are inapplicable here.

Heveder also argues that the insurance investigator's report and other documents in Colonial's files should have placed Colonial on notice that his father's death was a homicide, that Mrs. Heveder was a suspect, and that Colonial therefore should not have paid the claim. But that is not the language of the statute. If the General Assembly had wished to impose a "knew or should have known" standard upon the insurer, they could have done so. Such a standard has been included in other sections of the insurance code. See, e.g., OCGA §§ 33-2-24 (g) (enhanced penalty for violation of title if insurer or others knew or should have known of violation); 33-13-13 (b) (receiver may not recover dividend unless insurer knew or should have known that distribution might impair its obligations); 33-37-21 (a) (4) (notice of liquidation required to all persons known or reasonably expected to have claims against insurer). Alternatively, the General Assembly could have specified that some form of communication other than "written notice by or on behalf of some other person that the other person claims to be entitled to the payment or some interest in the policy" was adequate to fulfill the requirements of the statute. But any changes in the scope and application of the statute are for the General Assembly to consider, not this court.

As Colonial points out, this does not foreclose any remedies Heveder may have against Mrs. Heveder or others. By its plain meaning, however, the statute discharges Colonial from any claim under the policy, and the trial court erred in denying Colonial's motion for summary judgment.

*Judgment reversed. Ellington and Adams, JJ., concur.*

DECIDED JUNE 28, 2005 —
RECONSIDERATION DENIED JULY 13, 2005 — ▮

*Thompson, Slagle & Hannan, Michael J. Hannan III, Fakiha Khan,* for appellant.

*John M. Brown, James E. Staples, Jr.,* for appellee.